IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00221-PAB

DEVON GARREL JOHNSON,

      Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Devon Johnson on January 29, 2018.  Plaintiff seeks review of the final decision of the defendant (the "Commissioner") denying his claim for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[2]

**I. BACKGROUND**

On February 9, 2015, plaintiff applied for social security benefits under Title XVI of the Act.  R. at 66.  Plaintiff alleged a disability onset date of August 28, 2011.  *Id.*

---

[1] On June 4, 2019, Mr. Saul was confirmed as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul will be substituted as defendant for Nancy A. Berryhill, former Acting Commissioner of Social Security.

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

After his claims were initially denied on April 7, 2015, plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id.*

On March 29, 2017, the ALJ issued a decision denying plaintiff's claim. R. at 63. The ALJ found that plaintiff had not engaged in substantial gainful activity since the application date and had the following severe impairments: seizure disorder, lateral patellar impingement with mild chondromalacia patella, and obstructive sleep apnea. R. at 68. The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925, or 416.926. R. at 70. The ALJ additionally determined that plaintiff has several non-severe impairments: obesity, anxiety disorder, posttraumatic stress disorder ("PTSD"), and mood disorder. R. at 69. Ultimately, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform light work with the following qualifications:

> the claimant can frequently climb ramps or stairs, kneel, crouch, or crawl. He can tolerate frequent interaction with supervisors and coworkers and occasional contact with the general public. The claimant should be in a low stress work environment with no production rate pace, such as assembly line work. The claimant should not be exposed to flashing or bright lights nor should he have any exposure to hazards such as moving mechanical machinery or unprotected heights, including ladders, ropes or scaffolds. The claimant cannot operate a motor vehicle but he can tolerate frequent exposure to pulmonary irritants such as fumes, odors, dusts, gases, or poor ventilation.

R. at 71. The ALJ determined that plaintiff was unable to perform any past relevant work, R. at 78, but found that jobs existed in significant numbers in the national economy that plaintiff could perform. R. at 79.

On November 28, 2017, the Appeals Council denied plaintiff's request for review

of the ALJ's decision. R. at 1. Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff raises three objections to the ALJ's order: (1) the ALJ incorrectly concluded that plaintiff's PTSD and anxiety disorder are not severe; (2) the ALJ improperly concluded that plaintiff does not have an impairment or combination of impairments that render plaintiff disabled; and (3) the ALJ's RFC determination at step five is not supported by substantial evidence. Docket No. 16 at 5-7. The Court finds the third claim dispositive.

The ALJ found that plaintiff's seizure disorder is severe, R. at 68, but concluded that the "intensity, persistence[,] and limiting effects of [the] symptoms . . . indicate a greater functionality than alleged." R. at 77. Specifically, the ALJ found that plaintiff did "not need pain medication, he showered independently, prepared meals, read, exercised, interacted with others, went to the library and park with his daughter, did some basic housework, and used public transportation." *Id.* Additionally, the ALJ concluded that plaintiff did not need reminders to take care of his personal needs, went

shopping, paid bills, and, generally, was in fine physical condition. *Id.*

The ALJ then analyzed the opinion of Dr. Antoinette Quigley. *Id.* Dr. Quigley found on January 23, 2015 that plaintiff was not "permanently and totally disabled because of his seizures" and that there was other work that plaintiff could perform, so long as he did not drive or conduct manual labor. R. at 269. The ALJ gave this "great weight" because it was "consistent with the medical evidence of record." R. at 77.

After reviewing the opinion of Dr. Quigley, the ALJ evaluated Dr. Peter Bergman's "Seizures Medical Source Statement," R. at 77, wherein Dr. Bergman, a neurologist, opined that plaintiff's seizures would "severely" interfere with plaintiff's daily activities, that plaintiff is not capable of low stress work, and plaintiff could never lift any weight in a competitive work environment. R. at 391-93. However, the ALJ found that there were "no records to support that Dr. Bergman ever examined the claimant let alone treated him for any impairment." R. at 77. Additionally, the ALJ concluded that the record did not support Dr. Bergman's conclusions regarding plaintiff's memory, frequency of seizures, or ability to work in a low stress environment. R. at 77-78. In fact, plaintiff saw Dr. Bergman on at least four occasions. Specifically, plaintiff saw Dr. Bergman on September 17, 2015, R. at 421-24; January 20, 2016, R. 426-29; May 23, 2016, R. 455-57; and September 14, 2016. R. 460-62. Plaintiff stated at the hearing that he had been seeing Dr. Bergman "every three months or so." R. at 101-02. However, the ALJ did not review any of Dr. Bergman's treatment notes besides the Seizures Medical Source Statement when analyzing what weight to give Dr. Bergman's opinions.

Plaintiff argues that Dr. Bergman's opinion was entitled to substantial weight.

Specifically, plaintiff contends that the ALJ misread the record when he determined that Dr. Bergman had never seen plaintiff and that Dr. Bergman's opinion was inconsistent with the record.

The Court agrees with plaintiff that the ALJ's failure to analyze Dr. Bergman's records in concluding what weight to give his opinions in the Seizure Medical Source Statement is reversible error. The record demonstrates that Dr. Bergman was plaintiff's treating physician at the time of the hearing and ALJ decision. *See* 20 C.F.R. § 404.1527(a)(2) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.") Defendant does not deny that the ALJ incorrectly determined that there was no evidence that Dr. Bergman examined plaintiff. Docket No. 17 at 11. Instead, defendant argues that this mistake is immaterial. *Id.*

While an ALJ "is not required to discuss every piece of evidence," the "record must demonstrate that the ALJ considered all of the evidence." *Clifton v. Chater*, 79 F.3d 1007, 1109-10 (10th Cir. 1996) (citation omitted). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses to not rely upon, as well as significantly probative evidence he rejects." *Corley ex rel. C.M.C. v. Comm'r*, 752 F. App'x 635, 638 (10th Cir. 2018) (unpublished) (citation and quotations omitted). Furthermore, when examining the opinions of a treating physician, "the ALJ must review treating physician opinions using 'a sequential two-step inquiry, each step of which is analytically distinct.'" *Guice v. Comm'r*, 785 F. App'x 565,

569 (10th Cir. 2019) (unpublished) (quoting *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011)).  First, the ALJ must determine whether the opinion is "conclusive" and should "be accorded controlling weight, on the matter to which it relates."  *Id.* (citation and quotations omitted).  An opinion "must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."  *Id.* (citation and quotations omitted).  If the ALJ determines that the opinion of a treating physician should not be given controlling weight, "it is still entitled to deference and must be weighed using all of the factors provided in § 404.1527."  *Id.* (citations, quotations, and alterations omitted).  At the second step, the ALJ should consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (citations and quotations omitted).

Here, the ALJ erroneously concluded that there were "no records to support that Dr. Bergman ever examined the claimant let alone treated him for any impairment."  R. at 77.  In other words, the ALJ did not review Dr. Bergman's records, or even know that Dr. Bergman had seen plaintiff.  As a result, the record does not "demonstrate that the ALJ considered all of the evidence."  *Clifton*, 79 F.3d at 1109.  This error is compounded because, although an "ALJ must discuss the uncontroverted evidence he chooses to not rely upon, as well as significantly probative evidence he rejects," *Corley*,

8

752 F. App'x at 638, the ALJ did not recognize that Dr. Bergman had treated plaintiff, let alone discuss why he chose to reject Dr. Bergman's opinions contained outside of the Seizure Medical Source Statement. While an ALJ is not required to give controlling weight to a treating physician's opinion if it is inconsistent with "with other substantial evidence in the record," *Guice*, 785 F. App'x at 569 (10th Cir. 2019) (citation and quotations omitted), the ALJ must actually analyze the treating physician's opinions and compare them to the record to make the conclusion that the physician's opinion should not be given controlling weight.

Additionally, after making such a determination, the ALJ must weigh the remaining factors to determine what weight to give the treating physician's opinion. *See id.* (describing the factors relevant at the second step of the sequential analysis). The ALJ neither examined Dr. Bergman's treatment records to compare them to the evidence in the record nor analyzed the remaining factors. Because the ALJ never analyzed Dr. Bergman's other opinions, "the ALJ fail[ed] to explain or identify what the claimed inconsistences were between [the treating physician's opinion] and the other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). As a result, there are "not sufficiently specific" reasons for the ALJ's conclusion regarding the weight given to Dr. Bergman's opinion such that the Court can "meaningfully review [the ALJ's] findings." *Id.*

"The Court will not speculate on the weight the ALJ would have given to the opinion in question had it been read correctly or properly weighed, nor will the Court 'substitute its judgment for that of the agency.'" *Jones v. Astrue*, No. 12-cv-2125-WJM,

9

2013 WL 4522045, at *5 (D. Colo. Aug. 27, 2013) (quoting *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006)).  Because the Court finds that Dr. Bergman's opinions were not properly evaluated, the Court will remand the case for further proceedings. *See id.* (finding remand proper where ALJ "misread a key portion" of a physician's medical opinion that did not, contrary to the ALJ's assertion, contradict the claimant's testimony, but actually aligned with the claimant's testimony); *Sherman v. Berryhill*, 2017 WL 3575868, at *6 (D.N.M. Mar. 20, 2017) ("The ALJ's final reason for rejecting [the source] opinion is invalid as well, as it is based on a plain misreading of the record.").

The Court declines to address plaintiff's remaining objections to the ALJ's decision because they may be affected by the ALJ's treatment of the case on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").  On remand, the ALJ shall consider all of Dr. Bergman's opinions in light of this order.

## V. CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this order.

DATED November 24, 2020.

BY THE COURT:

/s Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge